RIDGE GROWERS, Inc.
v.
NATIONAL LABOR RELATIONS BOARD.
No. 14423.

United States Court of Appeals, Fifth Circuit.
March 31, 1954.

Wm. A. McRae, Jr., Chesterfield H. Smith, Bartow, Fla., for petitioners.

Rosanna A. Blake, Atty., A. Norman Somers, Gen. Counsel, David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, Maurice Alexandre, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

■ Petitioner seeks review of an order of the Board finding it had committed unfair labor practices by increasing the work of its employees as a penalty for their union activities, by discharging four named employees for union membership, and by refusing reinstatement to two other named employees because of their union affiliation. See 101 N.L.R.B. 744. The inquiry is whether the Board's findings of unlawful interference and discrimination are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Petitioner is a Florida corporation, with offices at Lake Wales, Florida, where it operates a packing house and is engaged in the business of packing and selling citrus fruits. Its operations are more or less seasonal in nature, the normal annual packing period extending from late September through the following June or July. Until about the first of November, 1950, the fruit was packed in bags with the employees tying the bags by hand. On that date, a bag-chain-conveyor system, which had been installed the previous summer, was put in use to increase production and efficiency of the packing operations. When the new system of tying the bags mechanically began operating effectively, petitioner reduced appreciably the piece-rate wages of the women fruit packers, which caused dissatisfaction among the employees, and, after an en masse protest to petitioner's President, Laird, proved ineffective, resulted in all of the employees joining a union. When Laird received a letter from the union requesting recognition on Saturday, November 18, 1950, he sent for his packing house foreman, White, and showed White the union's letter with the remark, "You know what that means, don't you * * they will tell us what to do instead of us telling them * * *." On that occasion Laird further observed, "The best thing to do is to find out which ones belong to it and work them out." Laird later showed White a list containing the names of five of the six women packers who had been actively pro-union, namely, Frances Clifford, Verna McMillan, Mary Hodge, Lorene Fowler, and Catherine Mixon, and stated, "We will fire them * * * I will write their time up this afternoon" and "you can let them go at 8 o'clock Monday morning * * *." However, these five employees were not discharged the following Monday, because that same afternoon Laird told White, "We better not fire them * * I have been to Bartow and seen my attorney; he says we might get into trouble."

According to further testimony, Laird ordered White that same day to discharge another pro-union employee, Sellers, because "He has gone to Auburndale to see the Union man". White accordingly effected Sellers' discharge the following Monday, even though Sellers then verified his permission from a supervisor, Griffin, to leave that day on a personal errand.

On Monday, November 20, 1950, White, acting on orders from Laird, began "to make it hard on the packers, make them use their packer's stamp, run the fruit up so high it would make it hard to pack, * * * top the fruit off, * * * so they would have to quit." [1] Also, White was required by Laird to inform the packers that, in the future, no employee would be permitted to leave the packing house without obtaining permission. All of these new rules were found by the Trial Examiner and the Board to be discriminatorily motivated, because they had not been enforced before the advent of the union in the packing house, although the "topping of fruit" and use of the "Packer's stamps" had at times been required for special orders and for holiday season shipments. Subsequent to petitioner's enforcement of the above rules increasing the work load of the packers, employees Clifford, McMillan, and Hodge were discharged and employees Fowler and Mixon were denied re-employment under circumstances hereafter stated.

According to petitioner's version of the testimony, Frances Clifford was discharged for justifiable cause because she left her work without permission, this defense being mainly based upon a denial by petitioner's foreman, Danley, that he told Clifford's son, Preston Pickles, that she could leave for home because of illness, since "we only have a few grapefruit to run." However, the Trial Examiner and the Board rejected Danley's testimony as unconvincing, and inconsistent with his other statements, as well as with testimony by petitioner's own witnesses, one of whom testified that Danley also gave her permission to leave that same morning and that she took Clifford home.

Another pro-union employee, Verna McMillan, was discharged by Foreman Danley on December 9, 1950, for the asserted reason that she was the aggressor in a fight in petitioner's packing house with another employee, Ailine Proveau, which admittedly took place at the latter employee's regular place of work. It is without dispute that both she and Proveau were discharged by Danley at that time, although Proveau, by that time an actively anti-union employee, was later reinstated by petitioner upon her application. According to petitioner another pro-union employee, Mary Hodge, was "laid off" for becoming involved in "a heated argument on the premises of the packing house" with an anti-union employee, Bernice Brackin, but the Trial Examiner and the Board found from other testimony that the argument was a more or less trivial incident which did not unreasonably impede the work, since it occurred during the lunch hour and near the packing house while it was not in operation; further, that under the circumstances petitioner's action was tantamount to discharge, and its failure to discipline the other anti-union employee, Brackin, in like manner after the incident revealed its discriminatory motivation.

Two remaining pro-union employees of petitioner, Lorene Fowler and Catherine Mixon, were permitted to work for the remainder of the packing season after the union's abortive attempt to secure recognition on November 18, 1950, but were found to have been discriminatorily denied re-employment the following season because of their prior

1. The "packer's stamp" bore the individual packer's number, and had been occasionally used to identify the boxes of fruit. Running the fruit "high" meant that rollers, which sized the fruit from the conveyor chain, were adjusted so as to cause the large and small pieces of fruit to be mixed together, making it more difficult for the employees to pack the fruit into boxes. To "top the fruit" meant that the employees were required to select the better fruit for the top layers of the boxes and to place them with the blossom end up. The employees were paid on a piece-rate basis, and the Board found that enforcement of these new rules in the packing operations increased the work load of the packers and to some extent decreased their wages.

union activities. Fowler had admittedly worked for petitioner for three seasons and Mixon for nearly two seasons before they joined the union. Shortly before the 1951–1952 packing season opened they both telephoned petitioner's foreman, Danley, to inquire whether they were on that season's list to work. On that occasion, according to the credited testimony, Danley promised to call Mixon the following week and let her know, which promise was not carried out, and told Fowler flatly that she was "just not on the list to work this season." It is undisputed that all employees who had worked for petitioner the previous season were then rehired except Fowler and Mixon, who had been actively pro-union in their sentiments the previous year, and that they were replaced by two new employees.

Petitioner insists that there was no anti-union motivation behind the rules requiring the packers to use their stamps and to "top the fruit off"; that packer's stamps were available and in use at its packing house long before the advent of the union, and were generally required by management in the citrus fruit industry in order to identify the employee who packed the fruit; that the testimony does not fairly support the finding that the fruit was purposely "run high" in order to inconvenience the packers and increase their work load, but on the contrary reveals that such a practice would have been contrary to regulations governing the industry and against petitioner's financial interest; finally that there is no testimony to show or support the finding of discrimination between the union and non-union employees with respect to any of the above practices.

The testimony is conflicting in practically all material aspects, and we think the Board was justified in crediting testimony by Foreman White and some of petitioner's own witnesses to the effect that the employees had not been generally required to use their stamps, to "top the fruit off", or to pack fruit "run high" before petitioner's receipt of the union's letter requesting recognition on November 18, 1950, after which Laird ordered White "to make it hard on the packers * * * so they would have to quit." At that time all of the packers had joined the union, which fact effectively refutes any inference favorable to petitioner which might otherwise be drawn from its testimony that the new working rules were not discriminatorily motivated because they were enforced against all employees alike. All ten of petitioner's packing house employees had attended the union meeting at Frances Clifford's home on November 16, 1950, and signed membership cards. Four days later Sellers was discharged, and employees Griffin, Brackin and Harrison withdrew from and actively opposed further affiliation with the union. These latter anti-union employees were never discharged, but the other five here involved who remained loyal to the union were subsequently terminated. By the time the union election was held on January 4, 1951, three of the pro-union employees had already been discharged and the union was defeated. Thus, the record contains proof that petitioner's anti-union tactics tended to discourage union membership in violation of the Act. See N. L. R. B. v. Metallic Bldg. Co., 5 Cir., 204 F.2d 826.

While we think the Board properly conceded that neither petitioner's installation of the bag-conveyor system nor any loss of pay which may have resulted therefrom may reasonably be viewed as violative of the Act, we think it correctly insists that petitioner's discriminatory motivation in adopting more strict rules and working conditions for its employees because of their union affiliation sufficiently supports the violations charged. As the Trial Examiner and the Board found, petitioner's abrupt change in employee policy after the union's attempt to secure recognition actually was intended "as a retaliation by the Respondent against its employees because of their membership in and activities on behalf of a labor organization", in violation of Section 8(a) (1) of the Act, and that finding is supported by

substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456.

Further review of the testimony convinces us that, with the single exception of the employee, Verna McMillan, all of the employees found to have been discriminatorily discharged or refused re-employment for union activity, were properly ordered reinstated. We think, however, that McMillan's discharge was for justifiable cause because she provoked a disturbance on petitioner's premises at another employee's regular place of work, which action by petitioner cannot constitute an unfair labor practice under the Act. N. L. R. B. v. Montgomery Ward & Co., 8 Cir., 157 F.2d 486.

As thus modified, the order of the Board is

Enforced.